UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

MAY 23 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

THE WILDERNESS SOCIETY,
    *et al.*,    )

    Plaintiffs,    )

    v.    )    Civil Action No. 98-2395 (RWR)

BRUCE BABBITT, Secretary of
    the Interior, *et al.*,    )

    Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiffs brought this action alleging that defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* (1994), and the Administrative Procedure Act, 5 U.S.C. §§ 701-706, by filing an inadequate Final Integrated Activity Plan/Environmental Impact Statement ("FEIS") and by failing to address properly the environmental impact of oil and gas development in a portion of the National Petroleum Reserve planning area in Alaska ("NPR-A").[1]  Defendants move to

_____

[1] Plaintiffs have since filed an amended complaint adding claims under the National Petroleum Reserves Production Act, 42 U.S.C. § 6502 *et seq.*, the Federal Land Policy and Management Act, 43 U.S.C. § 1701, Executive Order 11,990, 42 Fed. Reg. 26,961 (1977), reprinted in 42 U.S.C. § 4321, and the Endangered Species Act, 16 U.S.C. §§ 1533(a)(3)(A), 1536(d).



transfer this case to the District of Alaska pursuant to 28

U.S.C. § 1404.  The State of Alaska ("Alaska") and the Arctic

Slope Regional Corporation ("ASRC")[2] move to intervene.  Because

the balance of interests does not favor transfer, defendants'

motion will be denied.  Consistent with this Circuit's liberal

approach to intervention, the motions to intervene will be

granted.

I.    Motion to Transfer Venue

        A.    Legal Standard

        Defendants contend that, although venue is proper here, this

case should be transferred to Alaska pursuant 28 U.S.C.

§ 1404(a).  That section provides that "[f]or the convenience of

parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or

division where it might have been brought."  28 U.S.C. § 1404(a).

When a genuine choice of venue exists,[3] the decision to transfer

_____

        [2] ASRC is a Native Corporation which was formed under the
Alaska Native Claims Settlement Act, 43 U.S.C. § 1601 et seq.,
and is owned by its 7,300 Inupiaq Eskimo (the "Inupiat")
shareholders who are purportedly the only residents and private
land owners within the NPR-A.  (ASRC's Mem. Supp. Intervene
at 2.)  The Inupiat's cash economy is based almost exclusively on
oil and gas.  (Id. at 7.)

        [3] It is undisputed that this case could have been brought in
the U.S. District Court for the District of Alaska pursuant to 28

must be made "according to an 'individualized, case-by-case

consideration of convenience and fairness.'"  Stewart Org., Inc.

v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v.

Barrack, 376 U.S. 612, 622 (1964)).  In exercising its broad

discretion under section 1404(a), the court must balance a number

of case-specific factors which include the private interests of

the parties as well as public interests such as efficiency and

fairness.  See id. at 30.  In summary:

> The private interest considerations include:
> (1) the plaintiffs' choice of forum, unless
> the balance of convenience is strongly in
> favor of the defendants; (2) the defendants'
> choice of forum; (3) whether the claim arose
> elsewhere; (4) the convenience of the
> parties; (5) the convenience of the witnesses
> . . . , but only to the extent that the
> witnesses may actually be unavailable for
> trial in one of the fora; and (6) the ease of
> access to sources of proof.  The public
> interest considerations include:  (1) the
> transferee's familiarity with the governing
> laws; (2) the relative congestion of the
> calendars of the potential transferee and
> transferor courts; and (3) the local interest
> in deciding local controversies at home.

Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16

(D.D.C. 1996) (footnotes omitted).

_____

U.S.C. § 1391(e) because a substantial part of the events in
dispute took place in Alaska.

B.    Private Interest Considerations

1.    Plaintiff's Choice of Forum

It is settled that a case should not be transferred "from a
plaintiff's chosen forum simply because another forum, in the
court's view, may be superior to that chosen by the plaintiff."
Pain v. United Technologies Corp., 637 F.2d 775, 783 (D.C. Cir.
1980).  Absent specific facts that would cause a district court
to question plaintiffs' choice of forum, plaintiffs' choice is
afforded substantial deference.  See Shapiro, Lifschitz & Schram,
P.C. v. Hazard, 24 F. Supp.2d 66, 71 (D.D.C. 1998) (citing Int'l
Bhd. of Painters and Allied Trades Union v. Best Painting and
Sandblasting Co., 621 F. Supp. 906, 907 (D.D.C. 1985); Gross v.
Owen, 221 F.2d 94, 95 (D.C. Cir. 1955)).  Likewise, "[i]n weighing
claims of convenience, the Court recognizes the diminished
consideration accorded to a plaintiff's choice of forum where
. . . that forum has no meaningful ties to the controversy and no
particular interest in the parties or subject matter."  Islamic
Republic of Iran v. Boeing Co., 477 F. Supp. 142, 144 (D.D.C.
1979); see also Hawksbill Sea Turtle v. FEMA, 939 F. Supp. 1, 3
(D.D.C. 1996) (noting that plaintiff's choice of forum is
entitled to less deference when there is "an insubstantial
factual nexus with the plaintiff's choice") (internal citations

- 4 -

omitted); <u>Trout Unlimited</u>, 944 F. Supp. at 17; <u>Armco Steel Co. v. CSX Corp., L.P.</u>, 790 F. Supp. 311, 323 (D.D.C. 1991) ("[D]eference is 'greatly diminished when the activities have little, if any, connection with the chosen forum'") (quoting <u>Consolidated Metal Products, Inc. v. American Petroleum Inst.</u>, 569 F. Supp. 773, 775 (D.D.C. 1983)); <u>Citizen Advocates for Responsible Expansion, Inc. v. Dole</u>, 561 F. Supp. 1238, 1239 (D.D.C. 1983) (deference to plaintiffs' choice is diminished when "transfer is sought to the forum where plaintiffs reside . . . and the connection between plaintiffs, the controversy and the chosen forum is attenuated."). The degree of deference accorded to these plaintiffs' choice of forum therefore depends upon the nexus between plaintiffs' chosen forum -- the District of Columbia -- and the dispute over the Department of Interior's ("DOI") decision to commence oil and gas leasing in the NPR-A.

Defendants argue that "this case has no meaningful connection to the District of Columbia." (Defs.' Mem. Supp. Transfer at 12-13.) Because the specific lands at issue are in Alaska, the management of those lands are governed by federal statutes unique to Alaska and the NPR-A planning effort was undertaken in Alaska, defendants claim that Alaska is a more appropriate venue for this lawsuit. Defendants also note that

the extensive eighteen-month administrative process that led to

the FEIS for the NPR-A was conducted almost entirely in Alaska,

and the FEIS was prepared in Alaska.  (<u>Id.</u> at 5, 9.)  DOI's

Bureau of Land Management and Minerals Management Service offices

in Alaska were responsible for the DOI's environmental

assessment.  (<u>Id.</u> at 9.)  Those offices consulted with federal

and State of Alaska resource agencies, municipal governments on

the Northern Slope of Alaska, and Alaska Native organizations.

(<u>Id.</u> at 5.)  In addition to focusing on the process, Defendants

argue that the case should be transferred to Alaska because the

environment and the communities affected by Secretary Babbitt's

disputed decision are in Alaska.  (<u>Id.</u> at 11.)

     While this case does present a controversy that will have an

impact on the residents of Alaska, plaintiffs argue that the

future of oil and gas leasing in the NPR-A is not an isolated,

local environmental issue.  Plaintiffs convincingly characterize

the NPR-A as a national resource and argue that the DOI's

decision to commence oil and gas leasing in the NPR-A is a

national policy decision determining the use of scarce national

resources.  In deciding to transfer to Colorado an environmental

dispute over the granting of a private easement for continued

operation of a reservoir on public land, the court in <u>Trout</u>

Unlimited noted that "[i]mportantly, the people who are concerned about the easement's potentially negative impact upon wildlife are located in Colorado." Trout Unlimited, 944 F. Supp. at 17. In the case of the NPR-A, by contrast, the land at issue has consistently been treated as a national resource despite the special interest of the Alaskan people. For instance, when Congress transferred management of the NPR-A to the Secretary of the Interior in 1976, it was to ensure that the reserve would "be regulated in a manner consistent with the total energy needs of the Nation." Naval Petroleum Reserves Production Act, Pub. L. No. 94-258, 90 Stat. 303 (1976).

Defendants also contend that "the only connecting factor between the District of Columbia and this case is that the District is the location of the statutory home of DOI and the location of the Secretary." (Defs.' Mem. Supp. Transfer at 13.) However, the connection appears to be more substantial than that. Secretary Babbitt's involvement in the DOI's review of the impact of oil and gas leasing on the environment in the NPR-A was far from routine. He made a six-day visit to the area, and met with and was briefed by local Inupiaq Eskimo residents, government and industry officials, and scientists. NPR-A Planning Team, BLM, NPR-A Update, Issue 3, Aug. 1997 at 1 (Pls.' Opp'n, Ex. D .)

The DOI literature covering the event reported Secretary Babbitt
to have said that he would prevent leasing if the environmental
impact study conducted by his department did not support his
general impression that oil and gas development was compatible
with subsistence.  Id. at 2.  Secretary Babbitt also signed the
Record of Decision in the District of Columbia and briefed the
public on his decision here.  See Press Release, News, Babbitt
Presents Biologically Based NPR-A Plan That Balances Protection
for Wildlife Habitat With Oil and Gas Development, Aug. 5, 1998
(Pl.'s Opp'n, Ex. F.)  Secretary Babbitt's heavy involvement thus
highlights the significance of this issue to the entire nation.
By contrast, the Secretary of the Interior was not directly
involved in the local environmental controversies at issue in
Trout Unlimited and Hawksbill, and all decision-making in those
cases took place outside of the District of Columbia.

    Secretary Babbitt's personal involvement is not the only
link between this controversy and the District of Columbia.  Two
of the seven policymakers who comprised the DOI's NPR-A policy
group reside here.  (Decl. of Gene R. Terland, Defs.' Mem. Supp.
Transfer, Attach. A at ¶ 3.)  Because of interest in the NPR-A
outside of Alaska, DOI held a public meeting in Washington, D.C.
to solicit comments on the draft FEIS.  While seven of the nine

public meetings were held in Alaska, it is significant that,
according to one of its press releases, DOI held hearings in
Washington, D.C. and San Francisco "because of the national
public interest in this resource issue."  Press Release, <u>SLM
Plans San Francisco Public Hearing for Alaska Pertoleum Reserve</u>,
Dec. 23, 1997 (Pls.' Opp'n, Ex. E.)  The Bureau of Land
Management received 7,000 comments on their draft FEIS from all
fifty states.  (Pls.' Opp'n at 14.)  Indeed, the New York Times
editorialized about the Secretary's decision to open the NPR-A to
oil and gas leasing on August 5, 1998.  <u>Leave the Oil Reserve
Alone</u>, N.Y. Times, Aug. 5, 1998 (Pls.' Opp'n, Ex. G.).

　　　Plaintiffs also demonstrate that they have significant ties
to the District of Columbia.  Six of the eight plaintiffs are
national conservation organizations.  Four of the plaintiffs are
headquartered in Washington, D.C. and two others have offices
here.  (Pls.' Opp'n at 9, 11.)  The national organizations have a
total of 1,402,000 members both in and outside of Alaska.
(<u>Id.</u> at 9.)  While defendants rely heavily on <u>Trout Unlimited</u>,
none of the three plaintiffs in that case resided in the District
of Columbia.  Similarly, in transferring to the Virgin Islands a
suit brought by local landowners seeking to enjoin construction
of a temporary housing facility, the court in <u>Hawksbill</u> noted

that "[e]very one of the Plaintiffs, and Plaintiffs' lead counsel
. . . , live[d] on St. Thomas, Virgin Islands" and were either
owners and residents of a condominium project there.  <u>Hawksbill</u>,
939 F. Supp. at 3.

    In summary, plaintiffs' ties to the District of Columbia,
Secretary Babbitt's direct involvement in DOI's decision to
commence oil and gas leasing in the NPR-A, and the national scope
of the environmental issue plaintiffs raise defeat defendants'
claim that the connection between plaintiffs, the controversy and
the chosen forum is attenuated.  Therefore, plaintiffs' choice of
forum is entitled to substantial deference.

               2.   <u>Defendants' Choice of Forum</u>

    Defendants preference for having this case heard in the
District of Alaska is understandable.  The 100 DOI employees
assigned to the NPR-A project live in Alaska, the project manager
is in Alaska, and a majority of the DOI policy group members are
in Alaska.  The DOI conducted its research in Alaska, and the
disputed FEIS was drafted in Alaska.  Defendants have legitimate
reasons to prefer the District of Alaska, and their choice is
entitled to some weight.

### 3.    Where the Claim Arose

It is not clear from the facts alleged where exactly plaintiffs' claim arose.  The DOI conducted its research in Alaska, and the disputed FEIS was drafted in Alaska.  However, the Secretary signed the Record of Decision here in the District of Columbia and at least some policy review occurred at DOI's Washington headquarters.  (Defs.' Mem. Supp. Transfer at 11 n.5.) Moreover, the entire rulemaking process had a national dimension as comments were received from all 50 states and public meetings were held both inside and outside of Alaska.  The outcome of this factor is therefore inconclusive.

### 4.    Convenience to the Parties

Because plaintiffs have chosen the District of Columbia and six of the eight plaintiffs have offices in the District of Columbia, the argument that this venue is inconvenient for the plaintiffs is weak.  Defendants do note that two of the plaintiffs only have offices in Alaska, and three other plaintiffs also have offices in Alaska.  (Id. at 12.)  However, plaintiffs presumably do not consider the District of Columbia to be an inconvenient forum or else they would not have sued here.

While it would be arguably more convenient for defendants to litigate this suit in Alaska, the defendants have not established

any particular hardship in litigating this suit in the District of Columbia, beyond transporting a large administrative record. Defendants are currently represented by Department of Justice counsel in the Environment & Natural Resources Division. Moreover, plaintiffs note that both the State of Alaska and the ASRC (the two intervenors in this case) have both litigated in the District of Columbia before with some frequency. (Pls.' Opp'n at 13.)  Accordingly, this factor does not weigh in favor of transfer.

####### 5.    Convenience of the Witnesses

Defendants note that if the Court requires witnesses for limited purposes, it will be very inconvenient and expensive for these witnesses to come from Alaska to the District of Columbia. However, convenience of the witnesses should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Trout Unlimited, 944 F. Supp. at 16 (citing 15 Charles A. Wright, Arthur R. Miller & E. Cooper, Federal Practice and Procedure § 3851 (2d ed. 1986)).  This dispute involves review of an administrative record under several statutes.  As the defendants note, "judicial review is generally limited to the administrative record that was before DOI at the time that it rendered the challenged decision."  (Defs.' Mem.

Supp. Transfer at 13-14.)  While it is possible that upon a
motion for a preliminary injunction or temporary restraining
order this Court may allow witnesses to testify, it is more
likely that there will be no witnesses at all in this matter.
Accordingly, this factor does not favor transfer.  See Vencor
Nursing Ctrs., L.P. v. Shalala, 63 F. Supp.2d 1, 7 (D.D.C. 1999)
(noting that convenience of witnesses was of little relevance
because no evidentiary hearing or trial was foreseeable).

         5.   Ease of Access to Sources of Proof

     When the administrative record is the only "source of proof"
that will be seen by the Court, it is appropriate to consider its
location.  In Trout Unlimited, 944 F. Supp. at 18, for example,
the court noted that the voluminous record at issue was located
in Colorado while in Hawksbill, 939 F. Supp. at 3, the court
considered the fact that the entire record was located in the
Virgin Islands.

     The voluminous administrative record in this case is
currently housed in Alaska.  According to defendants, the record
contains 3,700 documents and duplicate sets have not been made
for the plaintiffs.  Instead, plaintiffs' counsel are reviewing
the record at the DOI's office in Anchorage, Alaska.  Defendants
contend that, if this case is transferred to Alaska, the court

                        - 13 -

could also review the record at DOI's office and photocopies
would not have to be made or transported.  (Defs.' Reply at 13.)
Because the record in this case contains approximately 3,700
documents and is currently located in Alaska, this factor weighs
in favor of transfer.

  C. <u>Public Interest Considerations</u>

  Section 1404(a) instructs the court to transfer cases "for
the convenience of parties and witnesses, in the interest of
justice. . . ."  28 U.S.C. § 1404(a).  "Amorphous though it may
be, the interest of justice 'may be decisive in ruling on a
transfer motion even though the convenience of the parties and
witnesses point in a different direction.'"  <u>Hawksbill</u>, 939 F.
Supp. at 4 (quoting 15 Charles A. Wright, Arthur R. Miller & E.
Cooper, <u>Federal Practice and Procedure</u> § 3854 (2d ed. 1986)).  In
determining which venue is favored by the interest of justice,
courts focus on several public interest considerations,
including:  (1) the transferee court's familiarity with the
governing laws; (2) the relative congestion of the calendars of
the potential transferee and transferor courts; and (3) the local
interest in deciding local controversies at home.  <u>See, e.g.</u>,
<u>Trout Unlimited</u>, 944 F. Supp. at 16.

1.  <u>Transferee Court's Familiarity With Governing Law</u>

A court's knowledge and familiarity with the issues presented can weigh for or against transfer in the interest of justice.  Both the U.S. District Court for the District of Alaska and the U.S. District Court for the District of Columbia have adjudicated many cases that are similar to plaintiffs' challenge to the DOI's decision to commence oil and gas leasing in the NPR-A.[4]  Unlike plaintiffs' claim in <u>Trout Unlimited</u>, this case does not involve any issues of state law.  <u>See</u> <u>Trout Unlimited</u>, 944 F. Supp. at 19.  There is therefore no advantage to having a federal court "thoroughly familiar and experienced" in the state law of Alaska adjudicate this suit.  <u>Id.</u>  Because this Court is familiar with the law governing plaintiffs' claims, there is no reason to transfer the case on these grounds.

---

[4] For Alaska cases, see for example <u>Stein v. Barton</u>, 740 F. Supp. 743 (D. Alaska 1990); <u>Hanlon v. Barton</u>, 740 F. Supp. 1446 (D. Alaska 1988); <u>Sierra Club v. Penfold</u>, 664 F. Supp. 1299 (D. Alaska 1987); <u>National Audobon Soc'y v. Hodel</u>, 606 F. Supp. 825 (D. Alaska 1984).  For D.C. cases, see for example <u>NRDC v. Hodel</u>, 865 F.2d 288 (D.C. Cir. 1988); <u>Sierra Club v. United States Dep't of Transp.</u>, 753 F.2d 120 (D.C. Cir. 1985); <u>Defenders of Wildlife v. Andrus</u>, 627 F.2d 1238 (D.C. Cir. 1980); <u>Wilderness Soc'y v. Morton</u>, 479 F.2d 842 (D.C. Cir.), <u>cert. denied</u>, 411 U.S. 917 (1973); <u>Anacostia Watershed Soc'y v. Babbitt</u>, 871 F. Supp. 475 (D.D.C. 1994); <u>Fund for Animals, Inc. v. Thomas</u>, 932 F. Supp. 368 (D.D.C. 1996), <u>aff'd</u>, 127 F.3d 80 (D.C. Cir. 1997).

- 15 -

2.    Relative Congestion of the Courts

Neither party argues that congestion in either court will cause undue delay.  Because the parties presented no evidence that plaintiffs will receive a speedier resolution of their claim in either court, this factor is entitled to little, if any, weight.

3.    The Local Interest in Deciding Local Controversies at Home

As the Supreme Court has noted, "[t]here is a local interest in having localized controversies decided at home." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947).  The key question, here is whether the disputed DOI decision to commence oil and gas leasing in the NPR-A constitutes a local controversy.  Defendants argue that this dispute is a localized controversy because it involves oil development in Northern Alaska to which the interests of the people of Alaska, particularly residents of Alaska's North Slope, are central.  (Defs.' Mem Supp. Transfer at 11.)

Defendants cite Hawksbill, Trout Unlimited, and Northern Alaska Envtl. Ctr. v. U.S. Army Corps of Eng'rs, C.A. No. 98-

0685, slip. op. (D.D.C. June 10, 1998),[5] as examples of cases in
this District that have been transferred to the location directly
affected by the environmental policy in dispute.  Plaintiffs,
however, convincingly distinguish the environmental disputes at
issue in those cases from DOI's decision to commence oil and gas
leasing in the NPR-A.  In <u>Northern Alaska Environmental Center</u>,
for example, the disputed U.S. Army Corps of Engineers' decision
involved lands controlled by the State of Alaska, not the federal
government.  In <u>Trout Unlimited</u>, plaintiffs objected to the
Forest Service's decision granting a private company an easement
to operate the Long Draw Reservoir, a water supply for the people
of Colorado.  The decisions at issue in <u>Trout Unlimited</u> were made
entirely by Forest Service personnel in Colorado, and the dispute
included possible state law claims which a federal court in
Colorado would be better able to adjudicate.  There was no
argument that the disputed easement decision was of national
significance or involved a national resource.  It was also a
regional controversy involving no national environmental
organizations or national issues.  <u>Hawksbill</u> involved a complaint
by local landowners who alleged that authorities would violate

_____

[5] Defendants attached this slip opinion to their motion as an
exhibit.

the Endangered Species Act if they were permitted to construct a temporary emergency housing facility in their community.

As discussed in the section addressing plaintiffs' choice of forum, see supra Part I.B.1, plaintiffs make a strong case that the disputed DOI decision involving the National Petroleum Reserve planning area in Alaska is not a local dispute affecting only the local residents of the Northern Slope of Alaska. Rather, Secretary Babbitt's decision to begin oil and gas leasing in the NPR-A affects a national energy reserve the management of which has received national attention.  The legislative history of the NPR-A supports this view, as does Secretary Babbitt's involvement, the decision of The New York Times to editorialize about the issue, and the commitment of five national environmental groups to this lawsuit.

    D.  Conclusion

DOI's decision to open the National Petroleum Reserve in Alaska to oil and gas leasing is a decision of national significance.  The history of the NPR-A, Secretary Babbitt's involvement, and the plaintiffs' national constituencies all highlight the national importance of this issue.  While the bulk of the research and analysis supporting DOI's decision was conducted in Alaska and almost all of DOI's employees who worked

on the project are located in Alaska, the connection of this suit

to the District of Columbia is not insubstantial.  Two of the

seven NPR-A policy group members reside in the District of

Columbia, and half of the plaintiffs are headquartered here.  Two

other plaintiffs have offices in Washington, D.C.  Furthermore,

the District of Columbia is more than just the "statutory home"

of the defendants.  Plaintiffs convincingly demonstrate that

Secretary Babbitt's involvement in the NPR-A leasing decision was

not routine, and that Secretary Babbitt made the final decision

of record in this matter.

Because plaintiffs have shown that the connection of this

suit to the District of Columbia is not attenuated, their choice

of forum is entitled to substantial weight.  Defendants' argument

that this case should be heard in Alaska in the interests of

justice is certainly not devoid of merit.  The administrative

record is located in Alaska, and the people who are directly

affected by the DOI's decision all reside in Alaska's Northern

Slope.  However, the future of one of the nation's National

Petroleum Reserves "touches" more than the local citizens of

Alaska.  The 1.4 million members of the environmental groups

bringing this suit view this as a national issue, and have chosen

to litigate this dispute in the District of Columbia.  In short,

the plaintiffs' choice of forum and the national significance of
this controversy require that the defendants' motion to transfer
venue be denied.

II.  Motions to Intervene

Plaintiffs do not oppose Alaska or ASRC's motions to
intervene as defendants pursuant to Federal Rule of Civil
Procedure 24(a), but argue that "intervenors right to submit
briefing with respect to plaintiffs' National Environmental
Policy Act claims under 42 U.S.C. § 4332 should be restricted to
those issues associated with injunctive relief." (Pls.' Response
to Mots. to Intervene at 1.)  Plaintiffs cite two Ninth Circuit
cases supporting this limitation.  See Forest Conservation
Council v. United States Forest Serv., 66 F.3d 1489, 1499 n.11
(9th Cir. 1995); Sierra Club v. EPA, 995 F.2d 1478, 1484 (9th
Cir. 1993).  However, the D.C. Circuit has taken a liberal
approach to intervention, see NRDC v. Costle, 561 F.2d 904, 910-
11 (D.C. Cir. 1977), and has not adopted the Ninth Circuit's rule
that only the federal government can be a defendant in a NEPA
case.  The Third Circuit has explicitly rejected the Ninth
Circuit's approach as unduly rigid in light of Rule 24's purpose
of protecting third parties affected by the litigation.  See
Kleissler v. United States Forest Serv., 157 F.3d 964, 971 (3d

- 20 -

Cir. 1998).  Because the Court agrees that the purposes of Rule 24 are best served by permitting the prospective intervenors to engage in all aspects of this litigation, both motions to intervene will be granted without limitation.  Accordingly, it is hereby

ORDERED that the defendants' Motion to Transfer Venue [8] be, and hereby is, DENIED.  It is further

ORDERED that ASRC's Motion to Intervene [9] be, and hereby is, GRANTED.  It is further

ORDERED that Alaska's Motion to Intervene [13] be, and hereby is, GRANTED.

SIGNED this _**22ⁿᵈ**_ day of May, 2000.

_[signature]_
RICHARD W. ROBERTS
United States District Judge

- 21 -